687 So.2d 843 (1996)
Robert ARNOLD d/b/a Yale Tire and Battery Company, Appellant,
v.
BEACON INSURANCE COMPANY OF AMERICA, a Foreign Corporation; The Hertz Corporation, a Foreign Corporation; and Citibank (South Dakota) N.A. d/b/a Citibank Preferred Visa, a Banking Corporation, Appellees.
No. 95-05144.
District Court of Appeal of Florida, Second District.
December 27, 1996.
Rehearing Denied February 11, 1997.
Kennan George Dandar of Dandar & Dandar, P.A., Tampa, for Appellant.
Jeffrey B. Strouse, Tampa, for Appellee Beacon Insurance Company of America.
Daniel H. Sleet of Barr, Murman, Tonelli, Herzfeld & Rubin, P.A., Tampa, for Appellee The Hertz Corporation.
*844 Lawrence B. Craig, III and Timothy M. Hartley of Valle and Craig, P.A., Miami, for Appellee Citibank (South Dakota) N.A.
FRANK, Acting Chief Judge.
Robert Arnold, in this declaratory judgment action, sued Beacon Insurance Company, VISA and Hertz, seeking coverage for liability claims brought against him for an automobile accident involving a Hertz rental car. The trial court entered summary judgment in favor of all three defendants. We affirm as to Hertz and Visa but because the trial court misinterpreted the Beacon policy, we reverse as to Beacon. Arnold does business as Yale Tire & Battery Co., a fleet maintenance operation servicing vehicles owned by other companies. Arnold owns several vehicles that were, at the relevant time, insured through Beacon Insurance Company under a garage liability policy. Because a truck that Arnold used for his personal travel was allegedly out of service, he rented a car from Hertz to travel to North Carolina with a friend. On the return leg of their journey, while his friend was driving, Arnold's rental vehicle was involved in an accident and sustained property damage. The friend was not a listed driver in the Hertz rental contract. A Hertz representative allegedly told Arnold that she would contact VISA about the accident because VISA provided insurance through a policy connected with the gold card which Arnold had used to pay for the rental. When VISA, Hertz, and his regular carrier, Beacon, each determined not to protect Arnold from the damage to the Hertz vehicle, Arnold sued all three.
On motions for summary judgment, the trial court held that the VISA policy covered only the cardholder and those authorized by the rental contract as additional drivers. Because Arnold's friend was not an additional driver under the Hertz contract, coverage for the accident was excluded. Similarly, Hertz was not liable because the car was operated by a non-authorized driver in contravention of the rental agreement. As to Beacon, the trial court ruled that coverage was excluded because Arnold was using the rental vehicle for pleasure rather than business when the accident occurred, and therefore the vehicle was not covered under the temporary substitute auto provision of the Beacon policy. The court entered summary judgments in favor of Hertz and VISA and partial summary judgment in favor of Beacon, finding that there was an issue of fact only as to whether Arnold's insurance agent erred in failing to provide the coverage Arnold sought, and if so, whether that liability extended to Beacon.
The fundamental problem with this lawsuit is that, even though Arnold's claim against Beacon was for property damage to the Hertz rental vehicle, this is a liability question, not a collision or property damage issue, under the Beacon policy. The collision or property damage features of the garage liability policy extend only to automobiles owned by Arnold, the insured. In this case, Arnold drove a Hertz vehicle. If any coverage is available it is through the liability coverage section of the policy, which provides:
We will pay all sums an "insured" (i.e., "you," Robert Arnold, and "[a]nyone else while using with your permission a covered "auto" you own, hire or borrow") legally must pay as damages because of ... "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."
The policy further provides, in its "Definitions" section, that "`Garage Operations' includes the ownership, maintenance or use of the `autos' indicated in Section I of this Coverage Form as covered `autos.'" Thus, all vehicles named as insured vehicles, including the Toyota pickup truck that Arnold used for both business and pleasure, are defined as included in "garage operations." As in Guillory v. Morein, 468 So.2d 1254, 1257 (La.Ct. App.1985), "[t]his language does not limit the use of covered automobiles to garage business."
Under "SECTION ICOVERED AUTOS" of the Beacon policy there appear numerical symbols that designate to which autos the specific coverages apply. They include, for instance, "21," which designates *845 "any auto," and "27," which is applicable to the liability portion of the policy and which provides, in relevant part:
27 = SPECIFICALLY DESCRIBED AUTOS. Only those "autos" described in ITEM SEVEN of the Non-Dealers' and Trailer Dealers' Supplementary schedule for which a premium charge is shown....
Because the number 27 appears next to the Liability Coverages section, Beacon contends that only the specifically described autos in the policy are covered and that the Hertz rental vehicle was excluded for this accident. Beacon's analysis did not take into account, however, another crucial provision, that applying to "CERTAIN TRAILERS AND TEMPORARY SUBSTITUTE AUTOS," which provides in relevant part:
If Liability coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability coverage:
. . . . .
2. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. "Loss"; or
e. Destruction.
This substitute auto section is crucial because Arnold made the uncontradicted assertion that he rented the Hertz vehicle to drive to North Carolina because the pickup truck that he used both in his business and for personal use was out of service for repairs. This section applies to cover the vehicle.
In focusing upon the specific use for which Arnold rented the Hertz car, the trial court overlooked the broad brush effect of the substitute auto provision and neglected to apply the general rule that "[i]nsurance contracts are to be construed strictly against the insurer and liberally in favor of coverage." Hertz Corp. v. Amerisure Ins. Co., 627 So.2d 22, 23 (Fla. 2d DCA 1993) (citing United States Aviation Underwriters v. Van Houtin, 453 So.2d 475, 477 (Fla. 2d DCA 1984)). The Hertz vehicle substituted for a covered auto. The Toyota truck, which was used in garage operations, would have been covered if it sustained damage on a trip to North Carolina. As stated in Burr v. Nationwide Mut. Ins. Co., 178 W.Va. 398, 359 S.E.2d 626 (1987), "the significant criterion for coverage under a garage operations policy is whether the vehicle involved is an insured vehicle under the policy, and not the nature of its use when the accident occurred." Consequently, the liability section of the Beacon policy operates to provide coverage for the damage sustained by the Hertz substitute auto.
Affirmed in part, reversed in part, and remanded.
ALTENBERND, J., and SCHEB, JOHN M., Senior Judge, concur.