819 So.2d 840 (2002)
Irene GRABER, individually and as Personal Representative of the Estate of Martin Graber, Appellant,
v.
CLARENDON NATIONAL INSURANCE COMPANY, Surgeon's Professional Liability Trust, and Irisc, Inc., Appellees.
No. 4D01-1296.
District Court of Appeal of Florida, Fourth District.
May 15, 2002.
Rehearing Denied July 12, 2002.
*841 Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., and Robert T. Bergin, Jr., of Robert T. Bergin, Jr., P.A., West Palm Beach, for appellant.
Jean Kneale and Dinah S. Stein of Hicks, Anderson & Kneale, P.A., Miami, for appellee Clarendon National Insurance Company.
Julio C. Jaramillo of Abadin & Jaramillo, Miami, for appellee Surgeon's Professional Liability Trust, and IRISC, Inc.
MAY, J.
The interpretation of insurance policy language and its application to the settlement of a medical malpractice action created the issues for review in this case. We hold that both policies provide for payment of prejudgment interest and the Clarendon policy provides for the payment of taxable costs.[1] We therefore reverse the summary judgments entered by the trial court and remand the case for further proceedings to determine the amount of taxable costs and prejudgment interest to be assessed.
The facts are undisputed. The plaintiffs, Martin and Irene Graber, filed a medical malpractice action against several defendants. The plaintiffs offered to arbitrate under section 766.207(2). The defendants declined arbitration, but the carriers for three of the doctors and their professional associations tendered their policy limits. Their tender was rejected by the plaintiffs.
Several defendants settled, but the case proceeded to trial against the remaining defendants. Soon after jury selection, Martin Graber died and the case was mistried. The parties agreed to mediate. Clarendon National Insurance Company insured Farkas, M.D., and his P.A. Surgeons' Professional Liability Trust [SPL] *842 insured Goldfarb, M.D., and Bequer, M.D., PA.[2]
The parties entered into a settlement agreement, which provided that the carriers would agree to pay their policy limits of $250,000 to the plaintiffs. The agreement provided that the payment "shall be considered as though judgments for the principal sum were obtained" and the plaintiffs would be entitled to recover prejudgment interest and taxable costs on that amount. The agreement further provided that these amounts were collectable only "in the event that a judicial determination is made that the insurance policies cover pre-judgment interest and taxable costs."
The plaintiffs filed a declaratory judgment action to obtain this judicial determination. The trial court found that the policies did not provide coverage for prejudgment interest and taxable costs. From these judgments, the plaintiffs appeal.
The parties agree on the applicable rules of law, but part ways with regard to interpretation of the language in the respective policies. Interpretation of insurance policy language is a matter of law, subject to de novo review. Coleman v. Fla. Ins. Guar. Ass'n, 517 So.2d 686 (Fla. 1988). Where more than one interpretation can be given to a policy's language, courts will rely upon the one providing coverage. Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176 (Fla. 4th DCA 1997); U.S. Aviation Underwriters v. Van Houtin, 453 So.2d 475 (Fla. 2d DCA 1984).
The general rule has been that insurance policies provide coverage for interest and costs, which exceed policy limits, unless specifically excluded by the policy. Foremost Ins. Co. v. Warmuth, 649 So.2d 939 (Fla. 4th DCA 1995). So let us turn to the policy language at issue.
Clarendon's policy states that the most that [it] will pay is ...
Each Claim: The Limits of Liability stated in the Declarations for Each Claim is the most We will pay for all Claims and Damages arising out of, or in connection with, all Professional Services rendered to an individual patient while You are insured by Us....
Damages means only compensatory damages resulting from providing or the failure to provide Professional Services. It does not include punitive or exemplary damage unless that coverage is required by the state where You practice.
The policy further provides that it will pay "in addition to the Limits of Liability in the Declarations":
4. All costs taxed against You and the interest on that part of any judgment that does not exceed the applicable Limits of Liability.
Our Obligation to make these other payments ends after the applicable Limits of Liability stated in the Declarations have been used up by payment of judgments and settlements.
Clarendon argued, and the trial court found, that prejudgment interest was a part of "damages," as defined by the policy and existing case law. The Clarendon policy provided coverage for damages up to $250,000, the stated limits of liability. Since the settlement exhausted those limits, the court found there was no coverage for prejudgment interest or costs.
The plaintiffs argued, however, that the policy's additional benefits provision provided for the payment of costs and interest applied to prejudgment interest over and above the limits of liability. On appeal, *843 the plaintiffs also argue that prejudgment interest is a "penalty" and therefore not part of the compensatory damages recoverable.
Florida law has long held that prejudgment interest is an element of compensatory damages. Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985); Miller v. Reinhart, 548 So.2d 1174 (Fla. 4th DCA 1989). In Argonaut, the Florida Supreme Court reviewed the history of prejudgment interest. "[S]ince at least before the turn of the century, Florida has adopted the position that prejudgment interest is merely another element of pecuniary damages." Id. at 214-15. The Court specifically declined to consider prejudgment interest a penalty.
We agree with this long-standing principle that prejudgment interest is not a penalty. However, unlike the prejudgment interest discussed in Argonaut and its progeny, the prejudgment interest at issue in this case is a statutorily created incentive. It is not tied to the liquidation of damages. Rather, it is designed to encourage prompt resolution of medical malpractice claims. § 766.206(1) (2001); St. Mary's Hosp., Inc. v. Phillipe, 769 So.2d 961, 970 (Fla.2000). Prejudgment interest is awarded under section 766.209, Florida Statutes, "[i]f the defendant refuses a claimant's offer of voluntary arbitration." As such, we distinguish prejudgment interest under section 766.209 from that traditionally imposed on liquidated damages under Argonaut. We must now determine whether it is covered under the Clarendon and SPL policies.
The Clarendon policy provides that it will pay "in addition" to the limits of liability "[a]ll costs taxed .. and the interest on that part of any judgment that does not exceed the applicable Limits of Liability." The insurer did not restrict the term "interest" to "pre" or "post" judgment. The policy makes no specific reference to prejudgment interest under section 766.209. The policy does not exclude prejudgment interest. The policy simply fails to address statutory prejudgment interest even though the law has been in existence for years.
Since the term "interest" is subject to more than one interpretation, it must be given the interpretation providing coverage. Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176 (Fla. 4th DCA 1997); U.S. Aviation Underwriters v. Van Houtin, 453 So.2d 475 (Fla. 2d DCA 1984). Consequently, we must disagree with the trial court's interpretation of the Clarendon policy and hold that it covers prejudgment interest "in addition" to the limits of liability.
The SPL policy contains slightly different language. It provides the following:
"DAMAGES" means all elements of legally recoverable compensatory damages, including damages for death, loss of services and consortium whether by direct action or derivative action, or by action for indemnification, subrogation, equitable subrogation, or contribution, which are payable because of Bodily Injury(ies) or Personal Injury(ies) to which this Policy applies. If attorney fees are legally recoverable by statute or rule of procedure, they are considered Damages under this Policy. Damages does not include fines, penalties, exemplary or punitive damages, multiples of compensatory damages, or return, withdrawal or nonpayment of fees or government payments.
"ADDITIONAL BENEFITS"
All of the following are in addition to the applicable Limits of Liability of your coverage":
. . . .

*844 2. The Fund will pay the expenses it incurs and the costs taxed against the Insured in suits the Fund defends.
3. The Fund will pay interest on that part of any judgment that does not exceed the Limits of Liability applicable to the claim.
SPL argued, and the trial court found, that the "damages" provision of the policy included prejudgment interest. Therefore, recovery for prejudgment interest was limited to the stated policy limits. We disagree with this interpretation based upon the same analysis set forth above.
On the issue of whether the policies provide coverage for costs, we again disagree with the trial court's ruling. Florida case law has long held that insurance policies generally provide coverage for costs over the stated limits of their liability. Spiegel v. Williams, 545 So.2d 1360 (Fla. 1989). Both the Clarendon and SPL policies specifically provide for the payment of taxable costs under the "Other Payments" or "Additional Benefits" provisions of their respective policies. As such, we reverse the summary judgment as to coverage for taxable costs under the Clarendon policy. As the summary judgment for SPL did not address the costs issue, it is not properly before us at this time.
POLEN, C.J., and HAZOURI J., concur.
NOTES
[1] The summary judgment entered on the SPL policy did not address the issue of costs and so the issue is not now before us.
[2] Surgeon's Professional Liability Trust and IRISC, Inc., are referred to as SPL.